UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GREET NORTHERN INSURANCE COMPANY, AS SUBROGEE OF BANCFIRST CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>SUMMIT FIRE & SECURITY LLC, INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO MAC SYSTEMS,<br><br>    Defendant/Third-Party Plaintiff,<br><br>v.<br><br>R. DRAKE MCDANNOLD and BOB, INC.,<br><br>    Third-Party Defendants. | Case No. 24-CV-268-CDL |

**OPINION AND ORDER**

Before the Court is R. Drake McDannold and Bob Inc.'s (the "Third-Party Defendants") Motion to Dismiss the Third-Party Complaint (Doc. 22) (the "Motion"). By consent of the parties, the undersigned has the authority to conduct all proceedings and order the entry of a final judgment in this action in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

**I. Background**

The Plaintiff in this action, Great Northern Insurance Company ("Great Northern") acting as the subrogee of the BancFirst Corporation ("BancFirst"), alleges that on or about

January 2, 2018, an on-site engineer detected a leak in the fire suppression system in a building occupied by BancFirst. (Doc. 2 at 5). BancFirst engaged Mac Systems, Inc. to replace the sprinkler and pipe system and place the system back in service. *Id*. Almost four years later, on or about December 25, 2022, Great Northern alleges that a cold weather event caused the sprinkler system to fail and discharge water, causing "extensive damage to the building." (Doc. 2 at 5). According to Great Northern's complaint, Mac Systems "knew or should have known that cold air in the ceiling space above the drive-in teller work area was adversely impacting the sprinkler piping" and that those who performed the repairs "were not properly trained to recognize the dangers, and alleviate the dangers, associated with cold air in the ceiling space." *Id*.

Great Northern, claiming to have paid $749,559.68 for the loss to BancFirst, now seeks subrogation against Defendant Summit Fire & Security LLC ("Summit Fire") for negligence, breach of contract, and breach of warranty. Great Northern asserts Summit Fire is the successor in interest to Mac Systems by operation of an Asset Purchase Agreement (the "Agreement") dated November 4, 2019.

Summit Fire filed an answer (Doc. 16) to the complaint and impleaded Bob, Inc., formerly Mac Systems, as well as R. Drake McDannold as Third-Party Defendants, seeking indemnity based on the Agreement and demanding their substitution as the parties in interest. On September 5, 2024, the Third-Party Defendants timely filed the present Motion pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 22).

## II.  Legal Standards

### A.  Dismissal Standard

To survive dismissal, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a motion to dismiss under 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. In doing so, "[w]e must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). When considering a motion to dismiss based on interpretation of language in a contract, "ambiguous contract language may not be resolved in a motion to dismiss," precluding dismissal where the contract language is not clear. *McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1143 (10th Cir. 2023) (quoting *Sonoiki v. Harvard Univ.*, 37 F.4th 691, 711 (1st Cir. 2022)).

### B.  Interpretation of the Agreement

#### i.  Choice of Law

The Third-Party Defendants have noted that the Agreement contains a choice of law provision, which reads that "[t]his Agreement shall in all respects be construed in

accordance with and governed by the Laws of the State of Delaware." (Doc. 22-1 at 31).[1] In determining the enforceability of a choice of law provision, a federal court sitting in diversity must apply the choice of law rules of the forum state. *Allstate Ins. Co. v. Covalt*, 321 Fed. Appx. 717, 720 (10th Cir. 2009). Under Oklahoma law, "[t]he general rule is that a contract will be governed by the laws of the state where the contract was entered into unless otherwise agreed and unless contrary to the law or public policy of the state where enforcement is sought." *Berry and Berry Acquisitions, LLC v. BFN Props. LLC*, 416 P.3d 1061, 1068 (Okla. 2018) (citing *Williams v. Shearson Lehman Bros., Inc.*, 917 P.2d 998, 1002 (Ct. App. Okla. 1995)). Further, in determining the validity of a contract's choice of law provision, Oklahoma courts often look for "a sufficient nexus" between the parties or facts of the case and the state whose laws would govern. *See, e.g.*, *id.*; *Wilkin v. Mitchell*, 2024 WL 3983751 at *2 (Civ. App. Okla. 2024) (unpublished).

Because Summit Fire is a Delaware LLC, consisting of a single Delaware corporation (Doc. 17), the parties to the Agreement have a sufficient nexus to Delaware for

---

[1] "When a party presents matters outside of the pleadings for consideration, as a general rule 'the court must either exclude the material or treat the motion as one for summary judgment.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (quoting *Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004)). However, limited exceptions apply, and "a district court may . . . consider documents attached to or referenced in the complaint if they 'are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Id.* (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)). The Agreement, which the Third-Party Defendants have attached to their Motion, is referenced and quoted therein; Summit Fire has not contested the authenticity of the attached Motion; and the language of the Agreement is central to Summit Fire's claim for indemnity. Accordingly, the Court finds it is appropriate to consider the Agreement itself without converting the Motion into a motion for summary judgment.

4

Delaware's laws to apply in interpreting the Agreement. *See, e.g.*, *Berry*, 416 P.3d at 1068. In applying the law of another jurisdiction, we "follow decisions of the state's highest court, or, when none is [o]n point, predict how it would rule on the issue." *McAuliffe*, 69 F.4th at 1143 (10th Cir. 2023) (quoting *Grynberg v. Total S.A.*, 538 F.3d 1336, 1354 (10th Cir. 2008)).

### ii. Contract Interpretation Under Delaware State Law

In interpreting contracts, "Delaware law adheres to the objective theory of contracts, *i.e.,* a contract's construction should be that which would be understood by an objective, reasonable third party." *Salamone v. Gorman*, 106 A.3d 354, 367–68 (Delaware 2014) (quoting *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Delaware 2010)). The court must "'give priority to the parties' intentions as reflected in the four corners of the agreement,' construing the agreement as a whole and giving effect to all its provisions." *Id*. at 368 (quoting *GMG Cap. Inv., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Delaware 2012)). "Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language." *Id*. (quoting *Eagle Industries Inc. v. DeVilbiss Health Care Inc.*, 702 A.2d 1228, 1232 (Delaware 1997)).

### III. Discussion

Summit Fire has advanced two theories, premised on different provisions of the Agreement, by which it seeks indemnity from the Third-Party Defendants. First, Summit Fire contends that the Third-Party Defendants breached the provision of the Agreement representing that "there were no liabilities or obligations, whatsoever" by failing to disclose

the work performed at the BancFirst building. (Doc. 22 at 4–5). Second, Summit Fire contends that claims arising from the work done under the BancFirst contract are "Excluded Liabilities" that Third-Party Defendants expressly retain pursuant to the Agreement (Doc. 22 at 5). Summit Fire's complaint survives dismissal if, under either theory, it has plausibly alleged that it is entitled to indemnification from the Third-Party Defendants for Great Northern's claims.

The Court finds that, because Summit Fire has plausibly alleged that Great Northern's claims are "Excluded Liabilities" for which the Third-Party Defendants have agreed to indemnify Summit Fire, Summit Fire's second theory is sufficient to state a claim for relief. Per the Agreement, the Third-Party Defendants must indemnify Summit Fire for "any and all Covered Losses any Buyer Covered Person may incur or suffer, which arise, result from, or relate to: (a) the Excluded Liabilities." (Doc. 22-1 at 6). "Excluded Liabilities" are "all those obligations other than the Assumed Liabilities" and include "any obligation or liability arising from any breach of any such Assumed Contract prior to the Closing Date." *Id*. at 2. When reading this language as an "objective, reasonable third party," *Salamone*, 106 A.3d at 368, Summit Fire's complaint plausibly alleges that the underlying claim is an "Excluded Liability." It asserts that Great Northern's claims arise from a breach of an "Assumed Contract," the BancFirst contract, and that said breach occurred prior to the closing of the Agreement. It follows that Summit Fire has stated a plausible claim for indemnity.

In their Motion to Dismiss, the Third-Party Defendants claim that both of Summit Fire's arguments fail because the injury—and therefore the subsequent liability to

6

BancFirst—"arose" after the Agreement's closing date and would place Great Northern's claims outside the definition of an "Excluded Liability." According to this argument, an "Excluded Liability" includes only liabilities arising "prior to the Closing Date." (Doc. 22-1 at 2) (emphasis added). As a result, the Third-Party Defendants contend that Great Northern's claims could not have been excluded liabilities at the time the Agreement was formed. (Doc. 22 at 5–7).

The Third-Party Defendants note that under Delaware law, a claim—or "liability"—under tort or contract cannot be stated without alleging an injury. (Doc. 22 at 5). Since it follows that a liability from a tort or contract claim cannot exist without an injury—and no injury had yet occurred as of the Closing Date—the Third-Party Defendants assert that Great Northern's claims were not liabilities at the time the Agreement was formed, and thus could not have been excluded from the Agreement.

However, this reading does not accord with the understanding of a "reasonable, objective third party." *Salamone*, 106 A.3d at 368. While claims in tort and contract necessarily involve injury, an objective third party could reasonably understand the term "liability" to encompass post-formation injuries resulting from pre-formation conduct. As Summit Fire points out in its Response, the Agreement provision that defines "Excluded Liabilities" includes language that refers to liabilities accruing in the future: "Except for the Assumed Liabilities, no liabilities or obligations of [the Third-Party Defendants] (whether absolute, accrued, contingent or otherwise *and whether arising before or after the Closing Date*) shall be assumed by [Summit Fire]. . . ." (Doc. 22-1 at 2) (emphasis added). This language directly contemplates that the Third-Party Defendants could incur liabilities

7

after the closing of the Agreement that would not be assumed by Summit Fire. To adopt the Third-Party Defendants' understanding of the term "liability" would contradict this provision. Doing so would also be contrary to Delaware law, which instructs this Court to "constru[e] the agreement as a whole and giv[e] effect to all its provisions." *Salamone*, 106 A.3d at 368 (quoting *GMG Cap. Inv.*, 36 A.3d at 779 (Delaware 2012)).

Thus, the Complaint plausibly alleges that Summit Fire is entitled to indemnity for the underlying claim. Accordingly, the Motion must be denied.

## IV.     Conclusion

Based on the above analysis, the Motion to Dismiss the Third-Party Complaint (Doc. 22) is **denied**. The Court will enter a scheduling order forthwith.

IT IS SO ORDERED this 1st day of November, 2024.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge